IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DOMINIC DeBELLIS, | * |
| Plaintiff, | * |
| vs. | * |
| | * CASE NO.: |
| JOSEPH WOODIT, FABIAN GARCIA, SEYMOUR BENNETT, Individually and Doing Business as JAMDOWN STABLES OCALA BREEDER'S SALES COMPANY, INC. and JOHN DOES (1-5), | * |
| Defendants. | * |

## COMPLAINT

Plaintiff, DOMINIC DeBELLIS, by and through his attorney, Law Offices of Andrew T. Cupit, by way of Complaint against the Defendants, hereby states and avers upon information and belief, as follows:

1. The Plaintiff is an adult individual residing in San Bernardino County, State of California.

2. The defendant, Joseph Woodit, is an adult residing at 1408 Hartford Square Drive, Edgewood, in the County of Harford, State of Maryland.

3. The defendant, Seymour Bennett, is an adult individual residing in Ocala, in the County of Marion, State of Florida, individually and doing business as Jamdown Stables.

4. The defendant, Fabian Garcia, is an adult individual residing at 6431 Southeast 216th Avenue, Morriston, in the County of Levy, State of Florida.

5. The defendant, Ocala Breeder's Sales Company, Inc. is a corporation, company, limited liability company, partnership, limited liability partnership and/or business entity, existing

and organized under the laws of the State of Florida with its principal place of business at 1701 SW 60th Avenue, Ocala, in the County of Marion, State of Florida.

6. The defendants John Does (1-5), is/are an adult individual(s) residing in the State of Maryland and represent the trainer(s) hired, contracted and/or retained by the defendants to train Plaintiff's particular specific thoroughbred horse.

7. That none of the individual defendants or the members, directors and/or officers of any of the business entity defendants are citizens or residents of the State of California.

8. That at all times herein mentioned, neither the Plaintiff, DOMINIC DeBELLIS, nor any of the Defendants were a citizen or resident of the same state as the other party and that every issue of law and fact is wholly between citizens of different states.

9. The matter in controversy exceeds, exclusive of interest and costs, the sum of seventy-five thousand ($75,000.00) dollars.

10. That at all times herein mentioned, the defendants advertised or permitted to be advertised auctions and/or sales of thoroughbred race horses at the Ocala Breeder's Sales Company within the State of Maryland, including but not limited to the co-defendant herein.

11. That at all times herein mentioned, the defendants provided information or permitted information regarding the sales and/or auctions of thoroughbred race horses at the Ocala Breeder's Sales Company to be provided, furnished and/or sent to residents in and of the State of Maryland, including but not limited to the co-defendant herein.

12. That at all times herein mentioned, the defendants solicited and/or accepted auction bids and/or bids for purchase of thoroughbred race horses at the Ocala Breeder's Sales Company from residents in and of the State of Maryland, including but not limited to the co-defendant herein.

13. That the defendants coordinated, assisted in, arranged for, participated in and/or otherwise caused the unauthorized sale of the aforesaid thoroughbred race horse to the co-defendant within the State of Maryland.

14. That the defendants coordinated, assisted in, arranged for, contracted for, participated in, scheduled and/or otherwise caused or facilitated the shipment and/or transport of the aforesaid thoroughbred race horse into the State of Maryland.

15. That the defendants coordinated, assisted in, arranged for, contracted for, participated in, scheduled and/or otherwise caused or facilitated the shipment and/or transport of the aforesaid thoroughbred race horse to the co-defendant within the State of Maryland.

16. That at all times herein mentioned, the defendant, Joseph Woodit participated in an auction or sale of thoroughbred race horses conducted by, held by or at, with or through defendant Ocala Breeder's Sales Company as well as communicated with the co-defendants from within the State of Maryland.

17. That at all times herein mentioned, the defendants were licensed to do business in the State of Maryland, engaged in commerce within the State of Maryland, caused and/or expected that the consequences of their business activities to be felt within the State of Maryland.

18. That upon information and belief, the subject matter of this action, the individual, particular and specific thoroughbred horse known as Hip927, bearing Jockey Club registration number 2007668, is stabled within the County of Anne Arundel, State of Maryland.

19. That defendants have renamed the particular horse "King Joey," and have stabled Plaintiff's particular thoroughbred horse at the Laurel Park Racetrack in the State of Maryland.

20. That jurisdiction of the Court in the within action is invoked pursuant to 28 U.S.C. §1332(a).

21. That venue of this action is proper in the State of Maryland as that is the last known location of the particular, individual and specific thoroughbred horse that is the subject matter of this action.

22. That Ocala Breeder's Sales Company, Inc., was and is a business entity engaged in the business of, including but not limited to the offering for sale to the public and/or organizing auctions for the sale and/or purchase of thoroughbred horses.

23. That at all times herein relevant, defendant, Fabian Garcia, was an independent contractor of and/or for Plaintiff, Dominic DeBellis, working under agreement with or for Plaintiff to train and prepare Plaintiff's thoroughbred horses for sale.

24. That at all times herein relevant, defendant, Fabian Garcia, was not an authorized agent or employee of Plaintiff.

25. That at all times herein relevant, defendant, Fabian Garcia, had no ownership interests in any of Plaintiff's thoroughbred horses.

26. That at all times herein relevant, defendant, Fabian Garcia, had no apparent or implied authority to act for or on behalf of Plaintiff with respect to the sale, assignment, conveyance, transfer, etc. of Plaintiff's thoroughbred horses.

27. That at all times herein relevant, defendant, Fabian Garcia, was required to obtain written approval and/or authorization from Plaintiff before training, preparing for sale and/or selling any of Plaintiff's thoroughbred horses.

28. That at all times herein relevant and prior hereto, defendant, Fabian Garcia, obtained written approval and/or authorization before training, preparing for sale and/or offering for sale any of Plaintiff's thoroughbred horses.

29. Defendant, Fabian Garcia, previously entered Plaintiff's thoroughbred horses for sale at auction correctly and properly indicating Plaintiff as the owner of said thoroughbred horses.

30. Defendant, Fabian Garcia, entered the Plaintiff's individual, particular and specific thoroughbred, known and identified as Hip927 in the Ocala Breeder's Sales Company, Inc.'s Spring 2022 sale.

31. Defendant, Fabian Garcia, entered the Plaintiff's individual, particular and specific thoroughbred, known and identified as Hip927 in the Ocala Breeder's Sales Company, Inc.'s Spring 2022 sale, representing himself as the owner of Plaintiff's said thoroughbred.

32. Defendant, Fabian Garcia, entered the Plaintiff's individual, particular and specific thoroughbred, known and identified as Hip927 in the Ocala Breeder's Sales Company, Inc.'s Spring 2022 sale, without Plaintiff's prior written approval and/or authorization.

33. Defendant, Ocala Breeder's Sales Company, Inc., knew and/or should have known that defendant, Fabian Garcia, was not the owner of Plaintiff's individual, particular and specific thoroughbred horse known and identified as Hip927.

34. Defendant, Ocala Breeder's Sales Company, Inc., permitted defendant, Fabian Garcia, to enter Plaintiff's individual, particular and specific thoroughbred horse, known and identified as Hip927, into its Spring 2022 sale.

35. Defendant, Ocala Breeder's Sales Company, Inc., permitted defendant, Fabian Garcia, to enter Plaintiff's individual, particular and specific thoroughbred horse, known and identified as Hip927, into its Spring 2022 sale, knowing that defendant, Fabian Garcia, was not the owner of Plaintiff's aforesaid individual, particular and specific thoroughbred horse.

36. Defendant, Ocala Breeder's Sales Company, Inc., permitted defendant, Fabian Garcia, to enter Plaintiff's individual, particular and specific thoroughbred horse, known and

identified as Hip927, into its Spring 2022 sale, without Plaintiff's consent, approval and/or authorization, written or otherwise, as well as knowing that the stud fee had not been paid and the registration was not complete.

37. Defendant, Ocala Breeder's Sales Company, Inc., by permitting defendant, Fabian Garcia, to enter Plaintiff's individual, particular and specific thoroughbred horse, known and identified as Hip927, into its Spring 2022 sale, violated its own rules as well as those of the Jockey Club.

38. Defendant, Ocala Breeder's Sales Company, Inc., by permitting defendant, Fabian Garcia, to enter Plaintiff's individual, particular and specific thoroughbred horse, known and identified as Hip927, into its Spring 2022 sale, facilitated and permitted fraud against Plaintiff.

39. Defendant, Ocala Breeder's Sales Company, Inc., by permitting defendant, Fabian Garcia, to enter Plaintiff's individual, particular and specific thoroughbred horse, known and identified as Hip927, into its Spring 2022 sale, facilitated and permitted theft of Plaintiff's aforesaid thoroughbred horse.

40. That defendant, Seymour Bennett, acted as an agent in connection with the unauthorized and unapproved sale of Plaintiff's aforesaid thoroughbred horse.

41. That defendant, Seymour Bennett's license expired in June 2021.

42. That at times relevant herein, defendant, Seymour Bennett's license was not renewed.

43. That at times relevant herein, defendant, Seymour Bennett, was acting as an agent without an active or valid license.

44. That at times relevant herein, defendant, Ocala Breeder's Sales Company, Inc., was required to and did review the credentials of agents participating in its sales.

45. That at times relevant herein, defendant, Ocala Breeder's Sales Company, Inc., was required to and did review the credentials of agents participating in its sales, prior to conducting any said sale.

46. That at times relevant herein, defendant, Ocala Breeder's Sales Company, Inc., knew or should have known that defendant, Seymour Bennett's license had expired.

47. Defendant, Ocala Breeder's Sales Company, Inc., permitted defendant, Seymour Bennett, to bid or act as an agent in connection with its Spring 2022 sale and Plaintiff's thoroughbred horse known and identified as Hip927.

48. Defendant, Ocala Breeder's Sales Company, Inc., permitted defendant, Seymour Bennett, to bid or act as an agent in connection with its Spring 2022 sale and Plaintiff's thoroughbred horse known and identified as Hip927, in violation of its own rules and that of the Jockey Club.

49. Defendant, Ocala Breeder's Sales Company, Inc., by permitting defendant, Seymour Bennett, to bid or act as an agent in connection with its Spring 2022 sale and Plaintiff's thoroughbred horse known and identified as Hip927, permitted and facilitated fraud upon the Plaintiff.

50. Defendant, Ocala Breeder's Sales Company, Inc., by permitting defendant, Seymour Bennett, to bid or act as an agent in connection with its Spring 2022 sale and Plaintiff's thoroughbred horse known and identified as Hip927, permitted and facilitated theft of Plaintiff's aforesaid thoroughbred horse.

51. The individual, particular and specific thoroughbred horse, known and identified as Hip927 was sold to defendant, Joseph Woodit.

52. The individual, particular and specific thoroughbred horse, known and identified as Hip927 was sold to defendant, Joseph Woodit, without Plaintiff's consent, authorization and approval.

53. The individual, particular and specific thoroughbred horse, known and identified as Hip927 was sold by defendants, Fabian Garcia and/or Ocala Breeder's Sales, Company, Inc., to defendant, Joseph Woodit.

54. The individual, particular and specific thoroughbred horse, known and identified as Hip927 was sold by defendants, Fabian Garcia and/or Ocala Breeder's Sales, Company, Inc., to defendant, Joseph Woodit, without Plaintiff's consent, authorization and approval.

55. The individual, particular and specific thoroughbred horse, known and identified as Hip927 was sold through defendant, Seymour Bennett, acting as an agent, to defendant, Joseph Woodit.

56. The individual, particular and specific thoroughbred horse, known and identified as Hip927 was sold by defendant, Seymour Bennett, acting as an agent, to defendant, Joseph Woodit, without Plaintiff's consent, authorization and approval.

57. The individual, particular and specific thoroughbred horse, known and identified as Hip927 was sold by defendants to defendant, Joseph Woodit in a private, unsanctioned and unauthorized sale.

58. Upon receiving information that his aforesaid thoroughbred horse was sold without his consent, approval and authorization, Plaintiff immediately contacted the defendants and advised them that the sale was void for fraud.

59. Upon receiving information that his aforesaid thoroughbred horse was sold without his consent, approval and authorization, Plaintiff immediately contacted the defendants and demanded the immediate and healthy return of his aforesaid thoroughbred horse.

60. Plaintiff has not received and had refused payment for the unauthorized, unapproved and fraudulent sale of his aforesaid thoroughbred horse.

61. Despite repeated requests, defendants have failed or refused to return Plaintiff's aforesaid thoroughbred horse.

62. Plaintiff's aforesaid thoroughbred horse is readily identifiable and has its own unique registration number and unique foal or ownership papers.

63. The foal papers are recognized certificates of ownership of a particular identified horse.

64. The foal papers for Plaintiff's thoroughbred horse known and identified as Hip927, indicates or has Plaintiff as its owner.

65. Upon receiving information that his aforesaid thoroughbred horse was sold without his consent, approval and authorization, Plaintiff immediately advised defendant, Ocala Breeder's Sales Company, Inc. that the defendant, its agents, servants, employees and/or representatives was not to transfer, release or tender Plaintiff's foal papers relating to his aforesaid thoroughbred horse to any party, or more specifically, any of the defendants herein.

66. Upon information and belief, despite Plaintiff's request and advisement to defendant, Ocala Breeder's Sales Company, not to transfer the foal papers on the particular thoroughbred horse, the said improperly, illegally and without authorization transferred the said foal papers on or about April 29, 2022.

67. The foal papers are Plaintiff's indicia of ownership for his aforesaid thoroughbred horse.

68. The dam of Plaintiff's aforesaid thoroughbred horse is "Queen of Denial" who's sire was "Pioneer of the Nile," and is the paternal sibling of "American Pharoah," a triple-crown winner.

69. The sire of Plaintiff's aforesaid thoroughbred horse is "Outwork", who is a Grade 1 Winner with purse winnings of approximately $701,800.00.

70. The lineage of a particular thoroughbred horse has significance in determining its value.

71. The estimated value of Plaintiff's aforesaid thoroughbred horse, based upon its lineage is approximately $105,000.00.

72. As a proximate result of the acts and omissions of the defendants as aforesaid, Plaintiff has incurred damages for the fraud relating to, and the loss and theft of his aforesaid thoroughbred horse.

## FIRST COUNT- CONVERSION

73. The Plaintiff repeats, re-alleges and reiterates the foregoing paragraphs of this complaint as though set forth at length herein.

74. The Defendants took and/or sold Plaintiff's aforesaid particular thoroughbred horse without Plaintiff's specific permission, consent and/or authorization.

75. The Defendants kept and/or retained Plaintiff's aforementioned thoroughbred horse.

76. The Defendants did not return or surrender the Plaintiff's aforementioned thoroughbred horse and its related foal papers.

77. The Defendants exercised exclusive dominion, custody and control over the Plaintiff's aforementioned thoroughbred horse and its related foal papers.

78. By keeping, retaining, failing and/or refusing to return and/or surrender to Plaintiff his aforementioned thoroughbred horse and its related foal papers, defendants exercised dominion and control over property to which the Plaintiff had or has a superior right of ownership.

79. At all times herein mentioned, defendants' exercise of dominion and control over Plaintiff's aforementioned thoroughbred horse and its related foal papers was complete, total and/or exclusive.

80. At all times herein mentioned, Defendants' exercise of dominion and control over Plaintiff's aforementioned thoroughbred horse and its related foal papers prevented Plaintiff from receiving possession, control and/or value of or for said thoroughbred horse or exercising any dominion or control over same.

81. The Defendants failed or refused to surrender and/or return Plaintiff's aforementioned thoroughbred horse and its related foal papers upon Plaintiff's demand and/or request.

82. The Defendants converted Plaintiff's aforementioned thoroughbred horse and its related foal papers to their own use and possession.

83. It is submitted that Plaintiff's aforementioned thoroughbred horse is a unique individual and irreplaceable.

84. However, Plaintiff's aforementioned thoroughbred horse also has a potential replacement value in excess of $100,000.00.

85. Defendants are responsible for conversion of Plaintiff's thoroughbred horse and its related foal papers as aforesaid.

WHEREFORE, Plaintiff respectfully requests judgment against defendants ordering defendants to immediately surrender or return the Plaintiff's specific thoroughbred horse and its related foal papers, and to compensate him for the loss thereof as follows:

(a) $105,000.00 plus additional damages, interest, costs and attorney's fees;

(b) Punitive damages in an amount exceeding $75,000.00;

(c) such other and further relief as may be just, proper and appropriate.

## SECOND COUNT- FRAUD

86. The Plaintiff repeats, re-alleges and reiterates the foregoing paragraphs of this complaint as though set forth at length herein.

87. At the time of the Spring 2022 sale, defendant, Fabian Garcia, improperly and fraudulently represented that he owned and/or that he had authority to sell the Plaintiff's aforementioned thoroughbred horse.

88. At no time prior to the Spring 2022 sale, or afterwards, did the said defendant seek or obtain, nor did the Plaintiff give or offer his consent, approval, authority or authorization for the said defendant to represent himself as the owner of or to sell Plaintiff's aforementioned thoroughbred horse.

89. That defendants knew or should have known that the representations by defendant Fabian Garcia were false or fraudulent.

90. All of the foregoing representations by defendants were false and/or fraudulent.

91. All of the foregoing representations by defendants were made with knowledge of their falsity.

92. All of the foregoing representations by defendants were made with the intent to induce reliance thereon.

93. The defendants knew and/or should have known that defendant Fabian Garcia did not have the express or implied authority to represent himself as the owner of or to sell Plaintiff's aforesaid thoroughbred horse.

94. The sale of Plaintiff's aforementioned horse in the Spring 2022 sale on April 22, 2022, was done without the consent, authority, authorization and/or approval of Plaintiff and thereby constituted an unauthorized, illegal and fraudulent transaction.

95. The defendants, or some of them knew or should have known that the sale of Plaintiff's aforementioned thoroughbred horse was void for fraud.

96. As a result of defendants' false and fraudulent representations, as well as defendants' unauthorized and fraudulent sale and/or transfer of Plaintiff's thoroughbred horse as aforesaid, Plaintiff has been damaged in the loss, loss of use, loss of possession, loss of value and/or loss of breeding value and/or rights of said thoroughbred horse.

97. That defendant knew or should have known that defendant Fabian Garcia did not have the authority, express or implied to enter or sell Plaintiff's specific and particular thoroughbred horse in the Spring 2022 sale.

98. That on or about April 29, 2022, defendant, Ocala Breeder's Sales Company, despite being previously advised of the fraudulent and unauthorized nature of the sale of Plaintiff's specific thoroughbred horse, transferred or allowed or permitted to be transferred Plaintiff's foal papers relating to the specific particular thoroughbred horse to defendants, there by completing the fraudulent sale.

99. That by illegally and fraudulently transferring Plaintiff's foal papers to defendants, despite being advised of the fraudulent and unauthorized nature of the sale of the particular thoroughbred horse, Ocala Breeder's Sales Company committed, permitted, acquiesced in and/or

conspired with the defendants to defraud Plaintiff out of his rightful property, i.e., the particular specific thoroughbred horse.

100. The defendants knew or should have known that the sale of the horse was fraudulent, illegal, improper and unauthorized and thus acted with scienter in committing a fraud upon the Plaintiff and/or in defrauding Plaintiff out of his property, i.e., the particular thoroughbred horse.

101. Defendants acted with scienter, ill-will and in concert with each other to defraud Plaintiff.

102. That as a result of defendants' fraud as aforesaid, Plaintiff is entitled to recover punitive damages against the defendants, jointly and severally.

WHEREFORE, Plaintiff respectfully requests judgment against defendants ordering defendants to immediately surrender the specific thoroughbred horse and to compensate him for the loss thereof as follows:

(a) $105,000.00 plus additional damages, interest, costs and attorney's fees;

(b) Punitive damages in an amount exceeding $75,000.00;

(c) such other and further relief as may be just, proper and appropriate.

### THIRD COUNT - THEFT

103. The Plaintiff repeats, re-alleges and reiterates the foregoing paragraphs of this complaint as though set forth at length herein.

104. Despite Plaintiff's repeated demands, defendants withheld Plaintiff's thoroughbred horse with the intent to deprive him thereof permanently or for so extended a period of time as to appropriate a major portion of its economic value.

105. Despite Plaintiff's repeated demands, defendants withheld or exercised unlawful control

over Plaintiff's thoroughbred horse with the intent to deprive him thereof.

106. Defendants had no intention of surrendering Plaintiff's thoroughbred horse after Plaintiff had requested and/or demanded return of same.

107. Defendants engaged in theft under Maryland Code Section 7-104.

108. Defendants engaged in theft by deception under Maryland Code section 7-104.

WHEREFORE, Plaintiff respectfully requests judgment against defendants ordering defendants to immediately surrender the three (3) specific thoroughbred horses and to compensate him for the loss thereof as follows:

(a) $105,000.00 plus additional damages, interest, costs and attorney's fees;

(b) Punitive damages in an amount exceeding $75,000.00;

(c) Such other and further relief as may be just, proper and appropriate.

## FOURTH COUNT – CONSPIRACY

109. The Plaintiff repeats, re-alleges and reiterates the foregoing paragraphs of this complaint as though set forth at length herein.

110. The defendants, Ocala Breeder's Sales Company, Inc., Fabian Garcia and/or defendant Seymour Bennett entered into an agreement with defendant Joseph Woodit to sell Plaintiff's aforesaid thoroughbred race horse to defendant Joseph Woodit.

111. The defendants engaged in a common scheme to sell Plaintiff's aforesaid thoroughbred race horse to defendant Joseph Woodit.

112. That the defendant's agreement to sell Plaintiff's aforesaid thoroughbred race horse was without his permission, consent or authority and in derogation of his property and ownership rights in his aforesaid thoroughbred race horse.

113. That the defendant's agreement to sell Plaintiff's aforesaid thoroughbred race horse was tortious and/or otherwise illegal and improper.

114. That the unauthorized, illegal, tortious and wrongful sale of Plaintiff's aforesaid thoroughbred race horse to the defendant, Joseph Woodit was an act in furtherance of defendant's illegal and improper agreement.

115. That as a result of defendants' illegal and improper agreement as aforesaid, Plaintiff has been deprived of the value and rights to his aforesaid thoroughbred race horse.

WHEREFORE, Plaintiff respectfully requests judgment against defendants ordering defendants to immediately surrender the three (3) specific thoroughbred horses and to compensate him for the loss thereof as follows:

(a) $105,000.00 plus additional damages, interest, costs and attorney's fees;

(b) Punitive damages in an amount exceeding $75,000.00;

(c) Such other and further relief as may be just, proper and appropriate.

### JURY TRIAL DEMAND

PLEASE TAKE NOTICE that Plaintiff hereby demands a trial by jury as to all issues.

Dated: April 14, 2023

LAW OFFICES OF ANDREW T. CUPIT

By: _____
By: Andrew T. Cupit, Esq.
Bar Number: 27633
1 Eves Drive, Suite 111
Marlton, New Jersey 08053
(856) 783-5680
*Attorney for Plaintiff*