IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| DOMINIC DeBELLIS, | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil No. 23-1009-BAH |
| JOSEPH WOODIT ET AL., | * | |
| Defendants. | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OPINION**

This dispute concerns the sale of a thoroughbred horse named Hip927, otherwise known as King Joey. Plaintiff Dominic DeBellis alleges that the Defendant Ocala Breeder's Sales Company, Inc. ("OBS") facilitated an unauthorized sale of Plaintiff's horse in spring 2022. ECF 41 (Amended Complaint) ¶¶ 50–57.[1] Plaintiff filed the present Complaint seeking the immediate return of Hip927 and $105,000 in compensation,[2] *id.* ¶¶ 85, 121, based on the alleged conversion

---

[1] The dispute is before the Court based on diversity jurisdiction. *See* ECF 41 ¶¶ 1–20 (indicating Plaintiff is a citizen of California, no Defendants are citizens of California, and the amount in controversy exceeds $75,000). Venue is proper as Maryland is the last known location of Hip927, the subject of this action. ECF 41 ¶ 21; 28 U.S.C. § 1391(b)(2) ("A civil action may be brought in . . . a judicial district in which . . . a substantial part of the property that is subject of the action is situated. . . .").

[2] Plaintiff filed an amended complaint on March 24, 2024, with leave of Court in response to this Court's memorandum opinion at ECF 36. ECF 41. As the Supreme Court has often recognized, "[n]ormally, an amended complaint supersedes the original complaint," *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 456 n.4 (2009). Because the Amended Complaint does not include new jurisdictional allegations against OBS, because OBS's motion to dismiss based on personal jurisdiction has been fully briefed since June 20, 2023, and because it is likely OBS's motion to dismiss based on the Amended Complaint would result in the same outcome, in the interests of judicial economy the Court construes OBS's motion to dismiss ECF 1 to be a motion to dismiss DeBellis's First Amended Complaint at ECF 41. *See* Fed. R. Civ. P. 1 (noting the federal rules are to be "construed and administered to secure the just, speedy and inexpensive

(Count I), fraud (Count II), theft (Count III), and conspiracy (Count IV) in connection with the sale of Hip927. *Id.* at 10–21.[3]

Before the Court is Defendant OBS's motion to dismiss for lack of personal jurisdiction, ECF 14. OBS's motion is accompanied by a memorandum of law and exhibits. ECFs 14-1; 14-2–14-5. The Court has reviewed all relevant filings, including Plaintiff's response in opposition, ECF 20, and OBS's reply, ECF 26. The Court finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, OBS's motion to dismiss is **GRANTED**.

## I.   BACKGROUND

OBS is a business entity organized under the laws in the State of Florida, with its principal place of business at 1701 SW 60th Avenue, Ocala, Florida. ECF 41 ¶ 5. OBS facilitates auctions of thoroughbred horses. *Id.* ¶ 22.

Plaintiff hired an agent to prepare Hip927 at an auction, Fabian Garcia ("Garcia"). *Id.* ¶ 23. Garcia sold Hip927 to Seymour Bennett ("Bennett"), the agent of Joseph Woodit ("Woodit"). *Id.* ¶¶ 40, 51, 55. Plaintiff alleges that OBS improperly allowed Garcia to enter Hip927 into the auction under Garcia's name and not Plaintiff's name. *Id.* ¶¶ 33–36. Plaintiff also alleges OBS improperly allowed Bennett to participate in the auction as an agent when he was unlicensed at the time.[4] *Id.* ¶¶ 43–46.

---

determination of every action"); *see, e.g., United States v. 18.67 Acres of Land*, 793 F. Supp. 582, 584 (M.D. Pa. 1992) (construing an answer as amended in the interests of judicial economy); *Williams v. Stofflet*, Civ. No. 15-1642, 2015 WL 4130930, at *3 (E.D. Pa. July 9, 2015) (construing a complaint as amended in the interests of judicial economy).

[3] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

[4] Plaintiff does not allege what type of license Bennett needed. *See* ECF 41 ¶¶ 42–46. Plaintiff only alleges that OBS was "required to and did review the credentials of agents participating in its sales" without reference to the specific type of credentials involved. *Id.* ¶ 44.

Ultimately, Hip927 did not sell at the auction; however, Garcia and Bennett (an unlicensed agent) allegedly entered into a private sale on OBS property at the conclusion of the auction. *Id.* ¶ 57. Plaintiff alleges that upon learning of the sale, he contacted OBS—who retained Hip927's foal papers, or ownership certificate, from the unsuccessful auction—and advised OBS not to transfer these documents to Woodit. *Id.* ¶ 65. On or about April 29, 2022, OBS transferred the foal papers of Hip927 to Woodit. *Id.* ¶ 66. Hip927 was transported to Maryland, *id.* ¶ 14, and his last known location was Anne Arundel County, Maryland.[5] *Id.* ¶ 18.

## II.    LEGAL STANDARD

Under Rule 12(b)(2), a defendant "must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)); *Jones v. Mutal of Omaha Ins. Co.*, 639 F. Supp. 3d 537, 544 (D. Md. 2022). The jurisdictional question is "a preliminary matter[,]" *id.* at 267, and "one for the judge" to resolve.[6] *Combs*, 886 F.2d at 676; *see also Jones*, 639 F. Supp. 3d at 544.

"The plaintiff's burden in establishing jurisdiction varies according to the posture of a case and the evidence that has been presented to the court." *Grayson*, 816 F.3d at 268; *Jones*, 639 F.

---

[5] It is no longer clear whether Hip927 is in Maryland. On March 20, 2024, in connection to another motion, Defendant Woodit indicated by affidavit that Hip927 was sold on December 29, 2023, and that the horse is no longer in his possession. ECF 40-3, at 1. For purposes of this motion, the Court measures OBS's contacts with Maryland at the time of the sale and transport of Hip927 to Maryland in April 2022. *Hardnett v. Duquesne Univ.*, 897 F. Supp. 920, 923 (D. Md. 1995) (noting "the only time when contacts are measured is as of the time the claim arose"). Therefore, Hip927's subsequent sale and transfer will not affect the analysis and the Court will treat Hip927 as if he were located in Maryland.

[6] "[O]nly when a material jurisdictional fact is disputed and that fact overlaps with a fact that needs to be resolved on the merits by a jury might a court defer its legal ruling on personal jurisdiction to let the jury find the overlapping fact." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016).

Supp. 3d at 544 (citing *Grayson*, 816 F.3d at 268). "[W]hen the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge." *Id.*; *see also Combs*, 886 F.2d at 676 (indicating the same); *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993) (explaining courts may consider affidavits from any party when applying the prima facie standard). "In that circumstance, 'the district court must determine whether the facts proffered by the party asserting jurisdiction—assuming they are true—make out a case of personal jurisdiction over the party challenging jurisdiction.'" *Jones*, 639 F. Supp. 3d at 544 (quoting *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019)). "When determining whether a plaintiff has made the requisite prima facie showing, the court must take the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff." *Grayson*, 816 F.3d at 268 (citing *Combs*, 886 F.2d at 676 and *Mylan Labs*, 2 F.3d at 60).

Further, "[a] threshold prima facie finding that personal jurisdiction is proper does not finally settle the issue; plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing." *Jones*, 639 F. Supp. 3d at 544–45 (alteration in original) (quoting *Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005)). "[N]either discovery nor an evidentiary hearing is required in order for the court to resolve a motion under Rule 12(b)(2)." *Jones*, 639 F. Supp. 3d at 544 (internal citations omitted). A court "may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question," *Combs*, 886 F.2d at 676, or may permit discovery as to the jurisdictional issue. *Jones*, 639 F. Supp. 3d at 544 (citing *Mylan Labs., Inc.*, 2 F.3d at 64)).

4

## III.   DISCUSSION

OBS moves for dismissal of all Counts against it for want of personal jurisdiction. ECF 14. "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler A.G. v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)); *Jones*, 639 F. Supp. 3d at 547 (citing *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003)). State long-arm statutes permit a forum to exercise personal jurisdiction over a non-resident defendant, consistent with principles of due process. *Carefirst of Md.*, 334 F.3d at 396; *Jones*, 639 F. Supp. 3d at 547. Federal courts determining whether "to assert personal jurisdiction over a nonresident defendant" must, therefore, consider: (1) whether the exercise of jurisdiction is authorized under the state's long-arm statute; and (2) whether the exercise of jurisdiction comports with the due process requirements of the Fourteenth Amendment." *Carefirst of Md.*, 334 F.3d at 396; *Jones*, 639 F. Supp. 3d at 547; *Nichols v. G.D. Searl & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993); *see also Clarke Veneers & Plywood, Inc. v. Mentakab Veneer & Plywood*, 821 F. App'x 243, 244 (4th Cir. 2020) (quoting *Carefirst of Md.*, 334 F.3d at 396).

Maryland's long-arm statute is codified Under Title Six of the Courts and Judicial Proceedings Article of the Maryland Annotated Code. *See* Md. Code Ann., Cts. & Jud. Proc. § 6-103(b) (2020 Repl. Vol., 2022 Supp.). It authorizes "personal jurisdiction over a person, who directly or by an agent," *id.*:

> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply goods, food, services, or manufactured products in the State;
>
> (3) Causes tortious injury in the State by an act or omission in the State;
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other

5

persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

(5) Has an interest in, uses, or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

*Id.*; *see also Beyond Syss., Inc. v. Realtime Gaming Holding Co.*, 878 A.2d 567, 576 (Md. 2005) ("[The Supreme Court of Maryland] ha[s] consistently held that the purview of [Maryland's] long arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution." (citing *Mohamed v. Michael*, 370 A.2d 551, 553 (Md. 1977) and *Geelhoed v. Jensen*, 352 A.2d 818, 821 (Md. 1976))); *Jones*, 639 F. Supp. 3d at 547 (quoting the same and citing *CSR, Ltd. v. Taylor*, 983 A.2d 492, 501 (Md. 2009) for the proposition that the Supreme Court of Maryland construe Maryland's long-arm statute as authorizing the exercise of personal jurisdiction "to the full extent allowable under the Due Process Clause" (citation omitted)).

While "the long-arm and constitutional due process requirements are distinct, they can be evaluated in tandem." *Jones*, 639 F. Supp. 3d at 547–58; *see also Beyond Sys.*, 878 A.2d at 576 (noting the "statutory inquiry merges with [the] constitutional examination"); *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135–36 (4th Cir. 1996) ("Because the limits of Maryland's statutory authorization for the exercise of personal jurisdiction are coterminous with the limits of the Due Process Clause, the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one."); *Toombs v. Lowe's Home Ctrs., LLC*, Civ. No. GLS-22-2244, 2023 WL 4593372, at *4 (D. Md. July 18, 2023). As such, the Court considers whether the exercise of personal jurisdiction over OBS comports with due process.

6

A federal court does not have jurisdiction over a non-resident defendant unless that non-resident defendant has purposely established "minimum contacts" with the forum state and the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Daimler A.G.*, 571 U.S. at 126 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011)); *Burger King Corp. v. Rudzevicz*, 471 U.S. 462, 474–76 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980). The concept of "traditional notions of fair play and substantial justice" that was first articulated in *International Shoe* developed into two branches of jurisdictional jurisprudence: general and specific. *Daimler A.G.*, 571 U.S. at 126 (citing *Int'l Shoe Co. v. Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). Under both categories the "constitutional touchstone" of personal jurisdiction is that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 475 (quoting *World-Wide Volkswagen*, 444 U.S. at 297); *see Jones*, 639 F. Supp. 3d at 548 (quoting the same).

Plaintiff asserts that the Court may exercise general and specific jurisdiction over OBS, ECF 20, at 10–12 (regarding specific jurisdiction); ECF 20, at 12–15 (regarding general jurisdiction). For the reasons that follow, the Court concludes it lacks jurisdiction over OBS.

**A. The Court Does Not Have General Jurisdiction Over OBS.**

"A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017) (emphasis in original) (citing *Goodyear*, 564 U.S. at 919); *Jones*, 639 F. Supp. 3d at 548 (quoting *Bristol-Myers*, 582 U.S. at 262). However, "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Bristol-Myers*, 582 U.S. at 262. A court cannot exercise general jurisdiction

7

over a non-resident defendant unless the non-resident defendant has contacts with the forum state that are so "substantial and of such a nature," as to render the non-resident defendant essentially "at home" in the forum state. *Daimler A.G.*, 571 U.S. at 138; *Goodyear*, 564 U.S. at 919.

A corporate defendant is "at home" where it is incorporated and where its principal place of business is located. *Goodyear*, 564 U.S. at 919; *Daimler A.G.*, 571 U.S. at 137 (noting these corporate locations are "easily ascertainable" and "afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims"); *see also Daimler A.G.*, 571 U.S. at 137–38 (noting these are not the only bases for a forum to assert general jurisdiction, they are "paradigms"); *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 125 (2023) (plurality opinion) (finding general jurisdiction over non-resident corporation when a Pennsylvania statute required non-resident corporations to consent to general jurisdiction in Pennsylvania courts as a prerequisite to doing business in Pennsylvania).

In this case, OBS is incorporated in Florida and has its principal place of business in Florida. ECF 41 ¶ 5. Those two "paradigms" of asserting general jurisdiction thus do not support asserting jurisdiction over OBS. Plaintiff does not dispute this. *See* ECF 20. Rather, Plaintiff argues OBS's contacts in Maryland are "systematic and continuous." ECF 20, 12–13. But this is not the standard for a court's assertion of *general* jurisdiction. *See Daimler A.G.*, 571 U.S. at 137 ("[T]he words 'continuous and systematic' were used in *International Shoe* to describe instances in which the exercise of *specific* jurisdiction would be appropriate." (emphasis in original) (citation omitted)). A corporation's "continuous activity of some sorts within a state is not enough to support the demand that the corporation be amendable to suits unrelated to that activity." *Id.* at 131 (quoting *Int'l Shoe*, 564 U.S. at 318). Rather, the contact must be so "substantial and of such

a nature" as to render the non-resident defendant essentially "at home" in the forum state. *Id.* at 138; *Goodyear*, 564 U.S. at 919.

Plaintiff's arguments that OBS transports horses to Maryland, conducts online auctions, advertises to Maryland customers,[7] and has filed suit in Maryland courts,[8] ECF 20, at 12–16, is not enough to make OBS "at home" in Maryland. *Compare Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438 (1952) (holding company incorporated in Philippines was "at home" in Ohio when company's president moved to Ohio, kept an office, maintained company files, and oversaw company activities within Ohio), *with Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416–19 (1984) (holding company incorporated in Columbia was not "at home" in Texas when its contacts with Texas included: sending its chief executive officer to Houston for contract-negotiation, accepting its New York bank account checks drawn on a Houston bank, purchasing helicopters, equipment and training services from a Texas helicopter company, and sending personnel to Texas for training).

---

[7] OBS details the nature of its advertisements, ECF 14-2, which Plaintiff does not dispute, *see* ECF 20. OBS advertises its auction sales in at least fourteen national and international journals and OBS advertises on social media and via television commercials. ECF 14-2, at 2–3. None of the advertisements target Maryland specifically. *Id.* The only states that appear particularly targeted are Florida and New York. *Id.* The catalogue of available horses that is compiled prior to each sale is also "available online and sent to persons throughout the nation who have purchased or sold horses at OBS and/or persons who have requested to receive copies of the catalogue . . . ." *Id.* at 3–4.

[8] Plaintiff provides a scan of a Maryland Judiciary case search revealing seven (7) proceedings in which OBS brought suit against Maryland residents. ECF 20-7, at 1. OBS argues that OBS suing in Maryland Courts over 27 years ago is not persuasive evidence of OBS being "at home" in Maryland. ECF 26, at 4. The Court agrees that seven suits nearly thirty years ago do not make OBS "at home" in Maryland. *See, e.g., Cutcher v. Midland Funding, LLC*, Civ. No. ELH-13-3733, 2014 WL 2109916, at *7 (D. Md. May 19, 2014) (finding non-resident company that participated in federal and state court litigation in Maryland was not "at home" in Maryland).

Contrary to the non-resident corporation in *Perkins*, OBS "maintains no offices, agents, employees, or representatives in the State of Maryland." ECF 14-2 (affidavit of Thomas Ventura, OBS President), at 2. Plaintiff's allegations of contact between OBS and Maryland, including running online auctions, arranging transportation, occasionally suing in Maryland courts, and advertising in Maryland, are more akin to the level of contacts in *Helicopteros*, and are not of such a substantial nature as would warrant a State's assertion of *in personam* jurisdiction over OBS in a cause of action not related to those contacts. *See Helicopteros*, 466 U.S. at 418 (noting "mere purchases, even if occurring at regular intervals are not enough" to make a company "at home"); *see also Nichols*, 991 F.2d at 1200 (holding company's retention of 17–21 promotional representatives and two district managers in Maryland, retention of automobiles, samples, and promotional materials in Maryland, company's one-time contact with a Maryland firm for drug research, and company's hosting of two regional and national meetings in Maryland did not make non-resident corporation "at home" in Maryland); *Cutcher v. Midland Funding, LLC*, Civ. No. ELH-13-3733, 2014 WL 2109916, at *7 (D. Md. May 19, 2014) (holding non-resident company that conducted business in Maryland, maintained an office in Maryland, and that participated in federal and state court litigation in Maryland were not "at home" in Maryland). OBS, therefore, is not subject to this Court's general jurisdiction.

**B. The Court Does Not Have Specific Jurisdiction Over OBS.**

Specific jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Reed v. Beverly Hills Porsche*, 307 F. Supp. 3d 494, 501–02 (W.D. Va. 2018) (quoting *Goodyear*, 564 U.S. at 919). A court has specific jurisdiction over a defendant if the defendant "purposefully established minimum contacts in the forum State such that [it] should reasonably anticipate being haled into court there." *Reed*, 307 F.

Supp. 3d at 502 (quoting *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016)). Stated differently, the defendant's contacts "must have been so substantial that they amount to a *surrogate for presence* and thus render the exercise of sovereignty just." *Id.* (emphasis added) (citing *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277–78 (4th Cir. 2009)).

The Fourth Circuit employs "a three-part test to determine whether the exercise of specific personal jurisdiction over a nonresident defendant comports with the requirements of due process." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 559 (4th Cir. 2014). Courts consider "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims [arose] out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." *Id.*; *Reed*, 307 F. Supp. 3d at 502 (applying the same); *Perdue Foods LLC*, 814 F.3d at 189. All three prongs must support the exercise of jurisdiction. *See, e.g.*, *Consulting Eng'rs Corp.*, 561 F.3d at 278 ("If, and only if, we find that the plaintiff has satisfied this first prong of the test for specific jurisdiction need we move on to a consideration of prongs two and three.")

"This analysis is not 'mechanical,' a court must weigh 'the totality of the facts before' it." *Perdue Foods LLC*, 814 F.3d at 189 (first quoting *Burger King*, 471 U.S. at 478, then quoting *Universal Leather, LLC*, 773 F.3d at 561); *Reed*, 307 F. Supp. 3d at 502. Additionally, at this stage in the proceeding, Plaintiff need only demonstrate a prima facie basis for the Court asserting jurisdiction. *Universal Leather, LLC*, 773 F.3d at 561 (citing *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003)). A plaintiff makes a prima facie showing of personal jurisdiction by presenting facts that, if true, would support jurisdiction over the defendant. *Id.* at 558.

11

Here, Plaintiff alleges OBS purposefully availed itself of Maryland law by advertising its horse auctions nationally, by accepting online bids for horse auctions (presumably from numerous potential forums), ECF 20, at 14, by facilitating the sale, ECF 20-6, at 2, by aiding in the transportation of a horse to a Maryland resident, ECF 41 ¶¶ 14–15, by taking a security interest in said horse, ECF 20-6, at 1, and by suing on seven different occasions within Maryland state courts approximately 27 years ago, ECF 20-7. *See* ECF 20, at 12–16. Assuming that OBS has established minimum contacts with Maryland such that it has purposefully availed itself of the laws of Maryland, Maryland's jurisdiction over OBS only extends to claims brought against it that arise from or are related to OBS's contacts. *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 359 (2021) (quoting *Bristol-Myers*, 582 U.S. at 272). For the reasons below, the Court determines Plaintiff has failed to make a prima facie showing of facts supporting the second element, *i.e.*, that Plaintiff's claims "arose out of or relate to" Defendant OBS's contacts with Maryland.

1. The Law on Establishing a "Nexus"

The requirement that a claim "arise out of or relate to" a defendant's contacts with the forum was most recently interpreted by the Supreme Court in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021). There, the Supreme Court explained that "[t]he first half of th[is] standard—the 'arise out of' phrase—asks about causation, while the back half—the 'relate to' phrase—'contemplates that some relationships will support jurisdiction without a causal showing.'" *Bradley v. DentalPlans.com.*, 617 F. Supp. 3d 326, 336 (D. Md. 2022) (quoting *Ford Motor Co.*, 592 U.S. at 362). "A plaintiff may satisfy the nexus requirement by showing that the suit *either* 'arises out of' *or* 'relates to' the defendant's contacts with the forum." *Id.* Finally, while the phrase "relates to" is clearly more encompassing than a causal nexus, "that does not

12

mean anything goes," and the Supreme Court cautioned that the phrase "relate to" has "real limits" in order to "adequately protect defendants foreign to a forum." *Ford Motor Co.*, 592 U.S. at 362.

In *Ford Motor Co.*, the manufacturer of Ford automobiles argued that the forums in which two Ford automobiles malfunctioned did not have personal jurisdiction over Ford as a defendant in a products liability action brought by purchasers of Ford automobiles. *Id.* at 355. Ford argued that although it had purposefully availed itself to the forum state (via extensive advertising and servicing of cars), those contacts did not "give rise to" the consumers' product liability action. *Id.* Instead, Ford argued the consumers ought to have brought suit in the states where the vehicles were manufactured or sold. *Id.* This argument rested on a strict causation theory of the nexus between the defendant's contacts with a state and the plaintiff's claim. *Id.* at 356. The Supreme Court rejected this theory and noted, that a plaintiff's claim must "arise out of *or relate to* the defendant's contacts" with the forum. *Id.* at 359 (emphasis added) (quoting *Bristol-Myers*, 582 U.S. at 272). As the Supreme Court put it, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State [and] is therefore subject to the State's regulation.'" *Bristol-Myers*, 582 U.S. at 271 (quoting *Goodyear*, 564 U.S. at 919); *Ford Motor Co.*, 592 U.S. at 359–60. Because the plaintiffs' injuries occurred in the forum, that connection with the underlying controversy established a sufficient nexus between the controversy and the forum state. *Ford Motor Co.*, 592 U.S. at 354.

In so holding, the Supreme Court affirmed that the underlying values that drive a personal jurisdiction analysis are two-fold: "treating defendant[s] fairly and protecting 'interstate federalism.'" *Ford Motor Co.*, 592 U.S. at 360 (quoting *Word-Wide Volkswagen*, 444 U.S. at 293). The nexus requirement treats defendants fairly by providing defendants with "fair warning" that "a particular activity may subject [it] to the jurisdiction of a foreign sovereign." *Id.* (alteration

in original) (quoting *Burger King*, 471 U.S. at 475–76).   Whereas interstate federalism considerations account for the interests of "the States in relation to each other," recognizing that "[o]ne State's 'sovereign power to try' a suit . . . may prevent 'sister States' from exercising their like authority." *Id.* (quoting *World-Wide Volkswagen*, 444 U.S. at 293).  Therefore, "[t]he law of specific jurisdiction [] seeks to ensure that States with 'little legitimate interest' in a suit do not encroach on States more affected by the controversy." *Id.* (quoting *Bristol-Myers*, 582 U.S. at 263).

*Ford Motor Co.* represents the paradigmatic case in which specific jurisdiction is found. *See id.* at 366 ("[T]his Court has used this exact fact pattern (a resident-plaintiff sues a global car company, extensively serving the state market in a vehicle, for an in-state accident) as an illustration—even a paradigm example—of how specific jurisdiction works.").   It is useful to contrast *Ford Motor Co.* with *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. 255 (2017), where the Supreme Court found the jurisdictional nexus between the forum, controversy, and defendant lacking.

In *Bristol-Myers*, consumers brought a products liability action against a prescription drug manufacturer in California.   582 U.S. at 259.   Some of those consumers were residents of California, while others were not.  *Id.*  The manufacturer's contacts with California included five company research and laboratory facilities, employment of about 250 sales representatives, and maintenance of a small state-government advocacy office.  *Id.* at 258–59.  The prescription drug that was at issue was not manufactured, labelled, or packaged in California.  *Id.* (noting that these actions were performed in New York or New Jersey).   While the prescription drug was sold in California, sales in California amounted to only about one percent of the company's nationwide sales revenue.  *Id.*  The Supreme Court held that the non-resident plaintiffs "do not claim to have

suffered harm" in California, and therefore, there was an insufficient nexus between the non-resident plaintiff's claims against non-resident prescription manufacturer defendant when based solely on the manufacturer's California laboratories and relatively small sale percentage in California. *Id.* at 267. Additionally, the Supreme Court expanded on the interstate federalism interests implicit in personal jurisdiction analyses and noted that "at times, this federalism interest may be decisive." *Id.* at 263.

With these principles in mind, the Court addresses Plaintiff's arguments supporting the exercise of jurisdiction.

2. Application of the Law to OBS's Contacts with Maryland

This case presents a non-resident plaintiff (of California) suing a non-resident corporation (of Florida) in tort based upon the non-resident plaintiff's claims that defendant should not have allowed a horse to be sold or to leave the non-resident defendant's property in Florida.[9] ECF 41 ¶¶ 1, 5, 38, 49. The horse was sold in Florida. *Id.* ¶¶ 53–57. While that horse now resides in Maryland under a Maryland co-defendant's care, *id.* ¶ 19; *see supra* note 5, this fact does not sufficiently allege "an affiliation between the forum and the underlying controversy." *Bristol-Myers*, 582 U.S. at 271 (citation omitted); *Ford Motor Co.*, 592 U.S. at 359–60.

---

[9] OBS's failure to prevent the sale between Garcia and Bennett, both on account of Garcia misrepresenting his ownership and Bennett being unlicensed, all occurred within the state of Florida. ECF 41 ¶¶ 5, 22, 32, 38, 47, 57. That fact, though not determinative, is relevant to whether OBS would have had "fair warning" that the failure to supervise a sale in Florida would lead to OBS being hailed into court in Maryland. *See, e.g., Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 769 (D. Md. 2004) ("A defendant has fair warning that the defendant might be subject to a forum's jurisdiction if the defendant purposefully directs activities at forum residents and "the litigation results from alleged injuries that 'arise out of or relate to' those activities." (citing *Burger King*, 471 U.S. at 472)).

To begin, the Court finds *Bristol-Myers* instructive, as both *Bristol-Myers* and this case involve a court's "jurisdiction to entertain claims involving no in-state injury and no injury to residents of the forum State." 582 U.S. at 267. Additionally, both cases involve non-resident plaintiffs suing a non-resident defendant based on an injury that occurred outside the forum state. *Id.* at 258–60; ECF 41 ¶¶ 1, 5, 38, 49. The interstate federalism considerations inherent in this analysis weigh against the exercise of jurisdiction. *See Ford Motor Co.*, 592 U.S. at 360 (recognizing that "[o]ne State's 'sovereign power to try' a suit . . . may prevent 'sister States' from exercising their like authority" (quoting *World-Wide Volkswagen*, 444 U.S. at 293)). Nevertheless, the Court addresses each of Plaintiff's arguments supporting the exercise of jurisdiction.

First, Plaintiff's argument that OBS took a security interest in Hip927, thereby connecting OBS to Woodit, a Maryland resident, is unpersuasive. *See* ECF 20, at 11. The nature of the underlying contacts and claim can be important to the establishment of a jurisdictional nexus. *See dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 134 (4th Cir. 2023) ("We have underscored that courts should consider 'the *quality* and *nature* of the defendant's connections, not merely the number of contacts between the defendant and the forum state.'" (emphasis in original) (quoting *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020)). For instance, courts are less likely to find a jurisdictional nexus when a plaintiff brings claims sounding in tort by pointing to contacts that are purely contractual in nature. *See Hardnett v. Duquesne Univ.*, 897 F. Supp. 920, 923 (D. Md. 1995) (noting a defendant's contractual contacts with a Maryland resident were so distinct from the underlying personal injury tort claims that the controversy did not arise out of the contacts); *Gatekeeper Inc. v. Stratech Sys., Ltd.*, 718 F. Supp. 2d 664, 668 (E.D. Va. 2010) (noting the plaintiffs failed to establish the defendant's contacts with the forum states that were "relevant to the elements of a tortious interference claim").

16

In *Hardnett*, the Court determined a defendant-university's contractual contacts ("the sending of literature to [the plaintiff] in Maryland, [plaintiff's] returning of a completed application from [Maryland], and [plaintiff's] receipt of a letter of acceptance in Maryland"), were too distinct from the nature of the dispute (personal injury that occurred at the defendant-university's premises in Pennsylvania) to constitute a jurisdictional nexus. *Hardnett*, 897 F. Supp. at 923. Here, the connection is even more attenuated as the California-based Plaintiff points to contractual contacts *of another individual* (Woodit's security agreement with OBS) to support Plaintiff's claim arising in tort against OBS (conversion and civil conspiracy). Additionally, the contractual contact between OBS and Woodit contained a Florida choice of law clause, ECF 20-6, at 1, further minimizing the persuasive value of contract weighing in favor of jurisdiction in Maryland.[10]

Next, Plaintiff's allegation that OBS facilitated the transportation of the horse to Maryland is also unpersuasive.[11] *See* ECF 41 ¶ 65–67. A defendant's contacts that occur after the underlying controversy are less likely to support the exercise of jurisdiction. *See Small Bus. Fin. Sols., LLC v. Corp. Client Servs., LLC*, Civ. No. GLS-21-811, 2023 WL 1995414, at *4–5, 7 (D. Md. Feb.

---

[10] As a technical matter it appears based on the exhibits Plaintiff presents that OBS did not, in fact, take a security interest in Hip927. *See* ECF 20-6, at 1 (picturing security agreement that indicates purchasers either may pay the purchase price in thirty minutes or grant a security interest in the horse with the purchase price to be paid in fifteen days); ECF 20-6, at 2 (showing Woodit wired $10,000 to OBS from Maryland on the day of the sale April 22, 2022, thereby indicating no security interest was granted). However, even assuming Plaintiff is right that a security interest was granted, it does not suffice to establish a jurisdictional nexus.

[11] OBS denies that it facilitated the transportation of Hip927. *See* ECF 14-2 (Affidavit of Thomas Ventura, Chief Executive Officer of OBS), at 4 (indicating "Woodit arranged for Hip927 to be picked up at OBS"). Nevertheless, the Court construes factual disputes in favor of the plaintiff when a defendant files a motion to dismiss based on a lack of personal jurisdiction. *Jones*, 639 F. Supp. 3d at 544 ("[T]he court may also consider affidavits submitted by both parties, although it must resolve all factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction." (quoting *Hawkins*, 935 F.3d at 226)); *see also UMG Recordings, Inc.*, 963 F.3d at 350; *Grayson*, 816 F.3d at 268; *Consulting Eng'rs Corp.*, 561 F.3d at 276; *Mylan Labs., Inc.*, 2 F.3d at 62.

17

13, 2023); *CresCom Bank v. Terry*, Civ. No. PMD-12–63, 2012 WL 3115929, at *3 (D.S.C. July 31, 2012) (noting meetings and phone calls that occurred after the relevant breach of a guarantee agreement were "irrelevant to the jurisdictional inquiry"); *see also Glynn v. EDO Corp.*, 536 F. Supp. 595, 606, n.15 (D. Md. 2008) (noting personal jurisdiction cannot be substantiated by contacts with the forum state that occur after the cause of action arises). The crux of Plaintiff's claim against OBS is that OBS should not have permitted the sale of Hip927 to proceed in Florida. What happened after the sale, including the shipment of the horse to Maryland, is more akin to the "meetings and phone calls that occurred after the relevant breach" in *CresCom Bank*, as they both have very little relevance to the jurisdictional inquiry. 2012 WL 3115929, at *3. This is particularly true when, as here, the facilitation of transport to Maryland was random and fortuitous, as OBS could have been asked to assist the transport of a horse to any state in the nation. *See Walden v. Fiore*, 571 U.S. 277, 286 (2014) ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." (quoting *Burger King*, 471 U.S., at 475)).

Plaintiff points to OBS's auction advertisements as evidence that it reached into Maryland to solicit business. ECF 20, at 3, 6. However, this contact is also too attenuated when Hip927 did not actually sell in the auction, but was sold subsequently in a "private, unauthorized" sale on OBS property. ECF 41 ¶ 57. The auction advertising is only conceivably related to Plaintiff's claims in the most attenuated sense. For instance, had there been no advertisements, it is possible Woodit would not have known of the spring 2022 auction. Had Woodit not known of the auction, then Woodit never would have contracted with Bennett to make a purchase at the auction. Had Bennett never contracted with Woodit, Bennett never would have engaged in the private, unauthorized sale

of a horse in Florida on behalf of Woodit. At minimum, this almost farcical string of possibilities demonstrates that OBS would not have had "fair warning," *Burger King*, 471 U.S. at 475–76, that its action of sending news of its auctions nation-wide[12] would result in OBS being hailed into Maryland court on account of a non-auction sale to account for tort claims like conversion and civil conspiracy.

It may be the case that OBS's advertising activities leave the door open to certain types of claims relating to sales that occur at OBS's Florida auctions being properly raised in Maryland. For instance, OBS's online auction might give OBS fair warning that a Maryland resident purchaser or seller of a horse might hail OBS to Maryland to contest the transaction occurring at OBS's auction. *See, e.g., Hahn v. Vt. L. Sch.*, 698 F.2d 48, 51–52 (1st Cir. 1983) (finding Vermont Law School had purposefully availed itself to the laws of Massachusetts where the school advertised in Boston newspapers and marketed itself in Massachusetts, where faculty members had visited at least 5 Massachusetts colleges to recruit students, and where close to 10% of the school's first year class had come from Massachusetts); *UMG Recordings, Inc.*, 963 F.3d at 353 (holding nonresident defendant had purposefully availed himself to the laws of Virginia where a high volume of website visitors were in Virginia and website permitted repeated commercial interactions with Virginia residents, even when no cash was exchanged and the website was free to use); *see also dmarcian, Inc.*, 60 F.4th at 134 (holding non-resident corporation purposefully availed itself of the laws of North Carolina by intentionally reaching out and entering a contractual relationship that "envisioned continuing and wide-reaching contacts" in North Carolina (quoting *Walden*, 571 U.S. at 285)). However, this is not the scenario presently before the Court as Plaintiff seeks to bootstrap jurisdiction in Maryland by seizing upon Woodit's Maryland residency.

---

[12] *See supra* note 7 (detailing extent of OBS's advertisements).

Plaintiff may not import Woodit's potential jurisdictional analysis against OBS onto himself, as Plaintiff is an upstream non-resident supplier of the horse.[13]  Equally salient is the fact that Maryland has "little legitimate interest" in regulating unauthorized sales of horses that occur after auctions in Florida, when such sales cause neither harm to a resident of Maryland nor injury to a non-resident in Maryland. *See Bristol-Myers*, 582 U.S. at 263.

Ultimately, this case involves a non-resident plaintiff suing, among others, a non-resident defendant in Maryland based upon a transaction and alleged tortious actions that did not occur in Maryland.  No Maryland resident was harmed by the auctioneering activities of non-resident defendant, OBS.  Exercising jurisdiction over OBS under these circumstances would contravene other States' legitimate interests and would be unfair to OBS. *See Ford Motor Co.*, 592 U.S. at 360; *Burger King*, 471 U.S. at 472.  Thus, Plaintiff has failed to prove a prima facie basis for the Court's exercise of jurisdiction over OBS in this case because Plaintiff has not alleged facts that, if true, would establish a sufficiently related nexus between Plaintiff's claims against OBS and OBS's contacts with Maryland.

---

[13] It is "axiomatic that the plaintiff bears the burden of establishing personal jurisdiction for each defendant individually." *Am. Ass'n of Blood Banks v. Bos. Paternity, LLC*, Civ. No. DKC-2008-2046, 2009 WL 2366175, at *4 (D. Md. July 28, 2009) (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984) and *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)); *Sant v. Marriott Int'l, Inc.*, Civ. No. GJH-22-1036, 2023 WL 2213926, at *7 (D. Md. Feb. 24, 2023); *see also Runze v. Marriott Int'l·Inc.*, Civ. No. 19-07151, 2020 WL 7027717, at *3 (N.D. Ill. Nov. 29, 2020) ("Mere affiliation between two entities does not impute one company's minimum contacts on the other."). While Defendant Woodit is a Maryland resident, ECF 41 ¶ 2, Woodit's residency status is not imputed onto OBS and Plaintiff must establish personal jurisdiction over OBS based on OBS's contacts alone.

**IV.   CONCLUSION**

In conclusion, OBS's motion to dismiss based on a lack of personal jurisdiction is

**GRANTED.**  An implementing order follows.

Dated: <u>April 1, 2024</u>                                    <u>            /s/            </u>
                                                          Brendan A. Hurson
                                                          United States District Judge

21